# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JULY 1998 SESSION



**FILED**

**August 31, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | **NO. 02C01-9707-CR-00274** |
| Appellee, | ) | |
| | ) | **SHELBY COUNTY** |
| VS. | ) | |
| | ) | **HON. L.T. LAFFERTY,** |
| SAMUEL F. HOWARD, III, | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Felony Murder, Especially |
| | ) | Aggravated Robbery) |

**FOR THE APPELLANT:**

**CHRISTOPHER L. NEARN**
**(Trial and Appeal)**
243 Exchange Avenue
Memphis, TN 38105

**BILL ANDERSON, JR.**
**(Trial Only)**
138 North Third Street
Memphis, TN 38103-2007

**FOR THE APPELLEE:**

**JOHN KNOX WALKUP**
Attorney General and Reporter

**PETER M. COUGHLAN**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

**WILLIAM L. GIBBONS**
District Attorney General

**J. ROBERT CARTER, JR.**
**ROSEMARY ANDREWS**
Asst District Attorneys General
201 Poplar Ave, Suite 301
Memphis, TN 38103-1947

**OPINION FILED:** _____

**AFFIRMED**

**JOE G. RILEY,**
**JUDGE**

**OPINION**

The defendant, Samuel F. Howard, III, appeals as of right his convictions by a Shelby County jury of murder in the perpetration of a felony and especially aggravated robbery. He received concurrent sentences of life and twenty (20) years. The defendant raises the following issues for review:

> (1) whether the evidence was sufficient for a jury to convict the defendant of murder in the perpetration of a felony and especially aggravated robbery;
>
> (2) whether the defendant was deprived of a fair trial because the jury was not individually questioned in *voir dire*;
>
> (3) whether the trial court improperly dismissed a prospective juror;
>
> (4) whether the trial court erred by admitting a photograph of the victim; and
>
> (5) whether the trial court erred by failing to grant a mistrial after the state made improper remarks during closing argument.

After a thorough review of the record, the judgment of the trial court is AFFIRMED.

**FACTS**

The victim, Roy Tate, was driving in Memphis with his friend, Rico King, on the evening of July 24, 1995. He pulled into an Amoco station to use a pay phone after his girlfriend paged him. As the victim spoke on the telephone, the defendant and Cedric Solomon approached him from behind. Solomon drew a nine (9) millimeter handgun and said, "don't move." King told the pair, "we'll give you whatever you want . . . just don't kill us."

The victim turned to face the pair. King testified that at this point he ran away. The victim attempted to run as well, but was shot twice from behind. The

defendant and Solomon then got in the victim's car and drove away. It is uncontroverted that Solomon, not the defendant, shot the victim.

Eric Denton testified at trial that the defendant and Solomon were riding in Denton's vehicle immediately prior to the killing. He stated that as they drove around Solomon stated he and the defendant needed to rob someone in order to pay the defendant's lawyer. Denton testified that he stopped at a store near the Amoco to purchase beer and use the restroom. Denton testified that as he exited the store he heard two (2) gunshots and observed Solomon standing by the Amoco pay phone with a pistol in his hand. Later that night, Denton saw the defendant and Solomon in the victim's car. Solomon asked Denton for help in removing the car's stereo components to sell them. The defendant and Solomon asked Denton if he knew of anyone interested in buying the car or its contents.

Anthony Evans testified that the defendant and Solomon approached him the night of the murder and sold him a car speaker system known as a "kick box." Evans testified he gave the defendant $100 for the speakers. Evans further testified that several days after the murder, he heard the defendant saying that he beat a murder charge when the police released him after questioning.

## SUFFICIENCY OF THE EVIDENCE

When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1,19 (Tenn. Crim. App.1996).

3

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn.1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App.1995).

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d at 476.

Further, a defendant who aids and abets a co-defendant in the commission of a crime, such as aggravated robbery, is liable for any crime committed by the co-defendant as a natural and probable consequence of the originally intended crime. State v. Carson, 950 S.W.2d 951, 956 (Tenn. 1997).

The defendant contends that a legitimate interpretation of the evidence would be that the defendant was forced by Solomon to participate in this criminal adventure. Further, the defendant contends that he never had the intent to harm the victim.

Testimony at trial revealed that the defendant and Solomon were looking for a person to rob the evening the victim was killed. Solomon stated they needed to steal in order to pay for the defendant's lawyer in an unrelated case. Further testimony showed the defendant was actively involved in selling stereo components from the victim's car. The defendant also bragged that he beat a

4

murder charge when the police initially released him after questioning.

Taking the evidence in a light most favorable to the state, the jury clearly could have concluded the defendant was a willing participant in the offenses charged.

This issue is without merit.

## VOIR DIRE

The defendant contends the trial court erred in denying his pre-trial motion for individual *voir dire*. The record is devoid of any motion or request for individual *voir dire*. Nor does the trial transcript reflect any discussion of this issue prior to *voir dire*. The issue is, therefore, waived. Tenn. R. App. P. 36(a).

Regardless, the control of *voir dire* rests within the sound discretion of the trial judge. State v. Stephenson, 878 S.W.2d 530, 540 (Tenn. 1994). In Tennessee, the prevailing practice is to *voir dire* prospective jurors collectively, rather than individually. State v. Oody, 823 S.W.2d 554, 563 (Tenn. Crim. App. 1991). While Tenn. R. Crim. P. 24(a) gives the trial court the right to individually question prospective jurors, it is only necessary to do so when there is a significant possibility that the juror has been exposed to "potentially prejudicial material." State v. Claybrook, 736 S.W.2d 95, 100 (Tenn. 1987) (quoting Sommerville v. State, 521 S.W.2d 792, 797 (Tenn. 1975)). The trial court's exercise of its discretion will not be disturbed unless there is an abuse of that discretion. State v. Irick, 762 S.W.2d 121, 125 (Tenn. 1988).

The defendant does not suggest that any juror had been exposed to prejudicial information. As such, we find no error in the use of a collective *voir dire*. This issue is without merit.

5

## DISMISSAL OF JUROR FOR CAUSE

The defendant alleges he was prejudiced by the trial court's dismissal of a potential juror. The juror expressed doubt regarding his ability to follow the law of criminal responsibility. At one point the juror stated he could not be fair to both sides. At another point he said, "I guess so" when asked if he could follow the law. Over the defendant's objection, the trial court dismissed the juror.

The decision of a trial court excusing a juror for cause is subject to an abuse of discretion standard. State v. Kilburn, 782 S.W.2d 199, 203 (Tenn. Crim. App. 1989). The trial court excused the prospective juror because he was equivocal in his answer regarding his ability to follow the law. The trial court was well within its discretion to dismiss the juror.

This issue is without merit.

## PHOTO OF VICTIM

The defendant contends the trial court improperly admitted a photograph of the victim taken at the crime scene. The defendant argues the photograph is inflammatory, and its probative value was far outweighed by its prejudicial effect.

The admissibility of photographs lies within the sound discretion of the trial court whose ruling will not be overturned on appeal except upon a clear showing of an abuse of discretion. State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978); *see also* State v. Stephenson, 878 S.W.2d at 542; State v. Bordis, 905 S.W.2d 214, 226 (Tenn. Crim. App. 1995). Nevertheless, the photographs must be relevant to an issue at trial with its probative value outweighing any prejudicial effect that it may have upon the trier of fact. State v. Braden, 867 S.W.2d 750, 758 (Tenn. Crim. App. 1993); State v. Jennifer Collins, C.C.A. No. 03C01-9704-

6

CR-00143, Hamilton County (Tenn. Crim. App. filed March 3, 1998, at Knoxville).

We must, therefore, first determine whether the photograph was relevant. Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401.

The photograph showed the victim lying on the pavement of the Amoco lot. The photograph was used by the state to corroborate the testimony of its witnesses. In light of the evidence previously introduced, the admission of the photograph of the victim presents a close question. Arguably, this information could have been properly relayed to the jury with testimony rather than the photograph. Although the photograph did show the victim's blood on the pavement, the trial court found that the photograph was not inflammatory. We conclude there was no abuse of discretion by the trial court in admitting this evidence.

Furthermore, even if the photograph was improperly admitted, its admission constituted harmless error. Tenn. R. App. P. 36(b). It certainly was not of the prejudicial magnitude of those utilized in State v. Jennifer Collins, supra (numerous photographs of "bruised, bloodied, nude, infant victim").

**IMPROPER CLOSING ARGUMENT**

The defendant's final issue relates to alleged improper statements made by the prosecutor in closing argument. The defendant claims the cumulative effect of these arguments rendered his trial unfair.

**A.**

7

The first argument said to have prejudiced the defendant concerned alleged gang activity. The prosecutor stated:

> Ladies and Gentlemen, Roy Tate died on July 24, 1995, because Samuel Howard is a wannabe. He's a gangster wannabe . . . He wanted to be a gang member . . . Samuel Howard was more than glad, that's his possible initiation into a gang membership . . .

The defense objected to this statement, and the trial court ruled there was no indication that the murder was part of a gang initiation. The trial court then gave the jury an instruction to disregard any comments about gang activities.

Although the prosecutor's remarks were improper, we must determine whether the defendant was prejudiced. This Court has set out five factors which must be considered in making the determination whether a prosecutor's improper conduct could have affected the verdict to the prejudice of the defendant. These factors are as follows:

1. the conduct complained of in light of the facts and circumstances of the case;

2. the curative measures undertaken;

3. the intent of the prosecutor in making the improper remarks;

4. the cumulative effect of the improper conduct and any other errors in the record; and

5. the relative strength or weakness of the case.

State v. Philpott, 882 S.W.2d 394, 408 (Tenn. Crim. App. 1994) (citing Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976).

The trial court admonished the jury to disregard any comments about gang activities. Jurors are presumed to follow the court's instructions. Henley v. State, 960 S.W.2d 572, 581 (Tenn. 1997); State v. Blackmon, 701 S.W.2d 228, 233 (Tenn. Crim. App. 1985).

Based upon the above principles, we conclude the prosecutor's remarks did not affect the verdict to the prejudice of the defendant. Certainly, the prosecutor's reference to gang activities did not rise to the level condemned in State v. William Charles Jones, C.C.A. No. 01C01-9512-CC-00402, Maury County (Tenn. Crim. App. filed June 30, 1997, at Nashville) (numerous "gang" references along with other inflammatory arguments).

This issue is without merit.

**B.**

The second prosecution argument alleged to have been improper concerned the defendant's partner, Cedric Solomon.

> Ladies and Gentlemen, Mr. Anderson wants to know why the state did not call Cedric Solomon. Why didn't they?

The prosecution made this rebuttal argument in response to the following closing argument of the defendant's counsel:

> I submit to you that the state did not prove any intent to rob on the part of Samuel Howard through a witness that they could have put up there and who might have cleared this entire thing up. Cedric Solomon. Why didn't they? Why didn't they?

The defendant claims the prosecutor's statement requires a reversal of his conviction because it implied the defendant had a burden to put on proof. We respectfully disagree.

The witness, Cedric Solomon, was equally available to testify for either side. *See generally* State v. Middlebrooks, 840 S.W.2d 317, 334 (Tenn. 1992); State v. Francis, 669 S.W.2d 85, 88 (Tenn. 1984). Defense counsel first raised the issue of Solomon's failure to testify in his closing argument, insinuating the

9

state was hiding something by failing to call Solomon. The prosecutor countered by stating the defense could have called Solomon.

Counsel for the defendant made an allegation that the state was attempting to keep exculpatory information from the jury. Both sides had the ability to procure Solomon's testimony. We agree with the trial court's ruling that it was appropriate for the state to apprise the jury of that fact in light of the defendant's argument.

This issue is without merit.

## CONCLUSION

After a review of the record and the briefs, we find no reversible error and AFFIRM the judgment of the trial court.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

_____
**CURWOOD WITT, JUDGE**

_____
**ROBERT W. WEDEMEYER,
SPECIAL JUDGE**

10